COX FRICKE LLP
A LIMITED LIABILITY LAW PARTNERSHIP LLP
JOACHIM P. COX                    7520-0
    jcox@cfhawaii.com
ABIGAIL M. HOLDEN              8793-0
    aholden@cfhawaii.com
800 Bethel Street, Suite 600
Honolulu, Hawai'i 96813
Telephone:  (808) 585-9440
Facsimile:   (808) 275-3276

WINSTON & STRAWN LLP
JENNIFER A. GOLINVEAUX (*pro hac vice* forthcoming)
    JGolinveaux@winston.com
THOMAS J. KEARNEY (*pro hac vice* forthcoming)
    TKearney@winston.com
101 California Street, 35th Floor
San Francisco, CA 94111
Telephone:  (415) 591-1000

Attorneys for Non-Party
COXCOM LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| IN RE: | CASE NO.: 1:23-mc-263-JMS-WRP |
| SUBPOENA OF INTERNET SUBSCRIBERS OF COX COMMUNICATIONS, LLC AND COXCOM LLC, | COXCOM LLC'S RESPONSE TO OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION [DKT. 10]; CERTIFICATE OF SERVICE |
| | Honorable J. Michael Seabright |

## COXCOM LLC'S RESPONSE TO OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION [DKT. 10]

Pursuant to Local Rule 74.1(b), CoxCom LLC ("Cox")[1] submits this Response to Petitioners' September 11, 2023 Objections to Magistrate Judge's Findings and Recommendation to Grant John Doe's Motion to Quash 512(h) Subpoena (Dkt. No. 10).

### PROCEDURAL BACKGROUND

On April 13, 2023, Petitioners sought a subpoena pursuant to Section 512(h) of the Digital Millennium Copyright Act, 17 U.S.C. § 512(h), directing Cox Communications, LLC [sic] and CoxCom LLC to provide personally identifying information about Cox subscribers who had allegedly been assigned certain internet protocol addresses ("IP addresses") listed in the Application. Dkt. 1 ("Application for 512(h) Subpoena"), 1-2. The Subpoena issued the same day. Dkt. 3.

On May 24, 2023, the assignee of one of the identified IP addresses submitted a letter to the Court asking to have the Subpoena "quashed or dismissed and … objecting to having [their] personal information released." Dkt. 4. The Court, construing the letter as a Motion to Quash, directed Petitioners to file a response by June 12, 2023. Dkt. Entry 5.  Petitioners filed a Memorandum in Opposition to

---

[1] Petitioners' Subpoena was directed to CoxCom LLC and "Cox Communications, LLC." Cox Communications, LLC is not an entity within the Cox family and appears to have been erroneously named in this matter.

Motion to Quash on May 29, 2023. Dkt. 6 ("Opposition" or "Opp."). Petitioners'

Opposition did not address the conditions placed on subpoenas under § 512(h), but

simply argued that "the subpoena … fully complie[d] with Rule 45 of the Federal

Rules of Civil Procedure." *Id.* at 3.[2]

On August 31, 2023, Magistrate Judge Porter filed Findings and

Recommendations to Grant John Doe's Motion to Quash 512(h) Subpoena, Dkt. 8

("F&R"). The F&R explained that because Petitioners had obtained the subpoena on

"a freestanding basis independent of a complaint or litigation," the "sole issue

presented in the case" is "whether the subpoena should be enforced or not." Dkt. 8

at 1-2 n.1 (citing *In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d 875, 880

(N.D. Cal. 2020).[3] The F&R found "that 512(h) subpoenas are not available to serve

---

[2] Petitioners' Application had stated that "[t]he proposed subpoena is a Rule 45 subpoena," Dkt. 1 at 3, but this is plainly incorrect: Petitioners sought the Subpoena under 17 U.S.C. § 512(h), not Rule 45, and as the Court recognized, "[t]his case concerns Petitioners' use of the subpoena provision of the Digital Millennium Copyright Act (DMCA), 17 U.S.C. Section 512(h)…" Dkt. 8 at 2. Section 512(h) of the DMCA, which is a separate and independent statutory authority for issuance of subpoenas, contains requirements and limitations not present in Rule 45, and Rule 45—unlike § 512(h)—does not authorize subpoenas outside the context of ongoing litigation. *See* F&R at 14 n.3 (noting that Petitioners could pursue "alternative avenues to seeking Doe's identity including a 'John Doe' lawsuit … [combined] with a motion for third party discovery"—that is, a Rule 45 subpoena).

[3] Other courts have similarly recognized that "[a] motion to quash challenges … the validity of the subpoena itself[.]" *Rowley v. City of New Bedford*, 2023 WL 3012578, at *3 (W.D. Ky. Apr. 19, 2023) (citing *Comer v. Roosen Varchetti & Olivier, PLLC*, 2018 WL 11473294, at *1 (E.D. Mich. Sept. 5, 2018)); *and see, e.g.*, 81 Am. Jur. 2d Witnesses § 12 ("It has been held that a motion to quash a subpoena can only challenge the validity of the subpoena[.]")

on ISPs acting as conduits for P2P file sharing infringement," *id.* at 10, and found and recommended:

> that the 512(h) Subpoena, ECF No. 3, be QUASHED and that Petitioners be ordered return and/or destroy any information derived from the Subpoena, to maintain no further record of the information obtained the Subpoena, and to make no further use of the subscriber data obtained from the Subpoena.

*Id.* at 16.

Petitioners filed objections to the F&R on September 11, 2023. Dkt. 10 (Objections" or "Obj."). Specifically, Petitioners objected to the Magistrate's conclusions:

1. That Cox acted as a "conduit" in the transfer of the files at issue;

2. That the § 512(h) subpoena was not valid because the DMCA precludes issuance of a subpoena directed to a service provider that provides services covered by Section 512(a) of the DMCA;

3. That an ISP like Cox cannot "remove or disable access to" allegedly infringing material, shared by P2P filesharing (such as the BitTorrent protocol), that is not stored on the ISP's servers.

Petitioners also objected generally to "all the F&R's factual conclusions that were not based upon any briefings of Doe or Petitioners," and objected to the F&R's recommendation that Petitioners be ordered to destroy and not use information obtained from the Subpoena.

Petitioners supported their Objections with a supporting Memorandum. Dkt. 10-1 ("Memorandum"). As discussed below, Petitioners' Memorandum goes beyond proper objection and urges the Court to make "factual" findings that are based on unsupported speculation, that lack any support in existing case law, or both. Accordingly, Cox writes to correct the record in certain respects.

## ARGUMENT

Petitioners' Memorandum objects to the Magistrate's finding that Cox is merely a provider of "conduit" (transmission) services with respect to the allegedly infringing material at issue, arguing that no evidence was submitted and no argument made on that issue. Obj. at 2; *see* F&R at 3 (noting that "it appears from other cases and the circumstances of this case that Cox's role in disseminating the allegedly copyrighted material is confined to acting as a mere 'conduit' in the transfer of files through its network including the files at issue in this case[,]" and quoting supporting findings from *BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293 (4th Cir. 2018)).

Yet at the same time, Petitioners also take the inconsistent position that the Court should make a *different*, completely unsupported, finding, based not on any facts before the Court, nor any legal authority, but solely on Petitioner's speculative, conclusory statement that the IP addresses assigned by Cox to its customers "are §512(d) information location tools linking to infringing material[.]" Obj. at 2. As

discussed below, Petitioners' mischaracterization of IP addresses as "links," and their argument that Cox provides "information location tools" under the meaning of the DMCA, does not withstand scrutiny. Accordingly, for at least the same reasons Petitioners provide in their Objections, it would be improper for the Court to make such a finding.

Section 512(d) of the DMCA on its face applies to online service providers[4] that "refer[] or link[] users to an online location…" by providing *tools*"—such as "a directory, index, reference, pointer, or hypertext link"—that enable the tool's users to locate "*information*" online. 17 U.S.C. § 512(d) (emphases added). Petitioners' conclusory, entirely unsupported mischaracterization of an IP address as such a tool, based on the unexamined theory that an IP address is also a "link," does not withstand scrutiny. As a matter of both well understood technology and ordinary meaning, an IP address does not create or function as a "link," any more than assigning a telephone number to a handheld device causes a phone call to be placed to the device, or assigning a street address to a house causes visitors to come to the house. Instead—as Petitioners themselves concede—an IP address merely "specifies" an online location. *See* Obj. at 5 (acknowledging that "IP addresses…

---

[4] As defined in the DMCA, an "internet service provider" (or "ISP") like Cox, which transmits, routes, or provides connections for data without modifying it, is one specific type of "service provider." Entities that provide other types of "online services or network access" are also referred to as "service providers" under the statute, but are not necessarily ISPs. *See* 17 U.S.C. § 512(k)(1).

*are ... online locations*"). As the Magistrate recognized, in the context of P2P filesharing systems such as Bit Torrent, any "linking or referring" *to* an IP address location is performed *by the providers and users of the P2P system*—not by an internet service provider like Cox that merely transmits data through its system at the direction of those third party users. *See, e.g.*, F&R at 3 ("*P2P systems* allow … *an internet user* [to] directly search the MP3 file libraries *of other users* … the transferred files are not stored on the computers of the ISP providing the P2P users with internet access.") (emphases added). Cox does not provide such P2P systems, and Petitioners properly do not claim that it does.

The sole authority Petitioners cite further undermines their speculation that an IP address somehow functions as a "link" to "information." This Court, in *HB Prods. v. Faizan*, explained that an IP ("Internet Protocol") address "*specifies the location* of [a] device or workstation on the Internet." 603 F. Supp. 3d 910, 917 n.2 (D. Haw. 2022) (quoting IBM, Dictionary of IBM & Computing Technology); *see* Obj. at 4 (acknowledging that an IP address "specifies the location of [a] device or workstation on the Internet"). Once again, "specif[ying]" a location is not the same as "linking" to it.

There is also no merit to Petitioners' speculation, relegated to a footnote, that other services Cox may or may not offer (such as provision of wi-fi routers or wireless "hotspots") could potentially bring Cox under the provisions of DMCA

subsections 512(b) or 512(c). Obj. at 5 n.4. Again, Petitioners' only cited "authority" for this conjecture fails to support it: their Exhibit 1 shows only that "Cox Hotspots"—a technology not at issue here—provide "wireless… internet connectivity," which on its face has nothing to do with either data caching (the subject of § 512(b)) or online storage at the direction of a user (the subject of § 512(c)). Similarly, Petitioners' perfunctory suggestion that "technology has changed significantly in the two decades since *Verizon* and *In re Charter*" is not only completely unsupported, but also fails to support their theory that IP addresses are, or could be, "information location tools." To the extent Petitioners suggest that the Court should find the Subpoena valid simply in order to provide Petitioners with ready access to the information they seek, there are—as the Magistrate noted—other means of obtaining the information they seek. *See* F&R at 14 n.3 (discussing "alternative avenues… including a 'John Doe' lawsuit").

Finally, Petitioners' argument that "the case law has developed in the last two decades," Obj. at 7-8, is puzzling, since none of the decisions they cite support their theory that Cox provides "information location tools" (or any other service subject to either section 512(b) or 512(c) of the DMCA). Simply put, they have no bearing on whether the Subpoena is valid in light of the DMCA.

**CONCLUSION**

The Magistrate Judge found, based on ample precedent, that "Cox's role in the alleged infringement was limited to providing the internet service that connected P2P subscribers utilizing a BitTorrent protocol to allegedly download and share movies between their personal computers; there was nothing stored on Cox's servers to be taken down." F&R at 14. Nothing in Petitioners' Response to the Motion to Quash or their Objections to the F&R supports a contrary finding that Cox's mere provision of IP addresses amounts to providing active "links" to content, or that IP addresses, standing alone, are "information location tools" within the meaning of 17 U.S.C. § 512(d). For the reasons above, the Court should decline Petitioners' request to make such a finding on this record.

DATED:  Honolulu, Hawai'i, September 28, 2023.

/s/ Abigail M. Holden
JOACHIM P. COX
ABIGAIL M. HOLDEN
JENNIFER A. GOLINVEAUX (*pro hac vice* forthcoming)
THOMAS J. KEARNEY (*pro hac vice* forthcoming)

Attorneys for Non-Party
COXCOM LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| IN RE: | CASE NO.: 1:23-mc-263-JMS-WRP |
| SUBPOENA OF INTERNET SUBSCRIBERS OF COX COMMUNICATIONS, LLC AND COXCOM LLC, | CERTIFICATE OF SERVICE |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this date, a true and correct copy of the foregoing document was duly served upon the following parties via the means and on the date indicated below:

Kerry S. Culpepper                                    [**VIA CM/ECF**]
kculpepper@culpepperip.com
CULPEPPER IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawaiʻi 96740

Attorney for Petitioners
VOLTAGE HOLDINGS, LLC
MILLENNIUM FUNDING, INC., and
CAPSTONE STUDIOS CORP.

DATED:  Honolulu, Hawaiʻi, September 28, 2023.

/s/ Abigail M. Holden
JOACHIM P. COX
ABIGAIL M. HOLDEN
JENNIFER A. GOLINVEAUX (*pro hac vice* forthcoming)
THOMAS J. KEARNEY (*pro hac vice* forthcoming)
Attorneys for Non-Party
COXCOM LLC